UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL T. OWENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-02241-JPH-KMB |
| ) | |
| NEIL D. PROPST, ) | |
| WILLIAMS, ) | |
| TERRANCE DICKERSON, ) | |
| CORE CIVIC INC, ) | |
| ) | |
| Defendants. ) | |

**Order Screening Amended Complaint and Directing Further Proceedings**

Plaintiff Michael T. Owens is a state prisoner. He filed this civil action alleging that he was exposed to COVID-19, improperly quarantined, and eventually contracted pneumonia while at the Marion County Jail II in the care of Core Civic, Inc. Because the plaintiff is a "prisoner," this Court has an obligation to screen the amended complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Amended Complaint

The amended complaint names Dr. Neil D. Propst, Chief Williams, Warden Terrance Dickerson, and Core Civic, Inc., as defendants. Dkt. 26 at 1-2.

On or about March 25, 2020, nurses came to Mr. Owens' unit to do temperature checks to screen for COVID-19. The nurse reported that Mr. Owens' temperature was a little high. Mr. Owens was ordered to move to 2-F where he was housed with twelve other inmates. Dkt. 26 at 3-4. Approximately five days later, Dr. Propst performed a COVID-19 test and Mr. Owens and five other inmates tested positive. *Id.* at 4. The inmates that tested positive for COVID-19 remained in quarantine. *Id.*

Chief Williams and Warden Dickerson continued to place inmates with positive coronavirus tests in the quarantine dorm. *Id.* Mr. Owens alleges that as a result, he continued to be reinfected. Warden Dickerson explained that inmates continued to be added to the unit because it was the only quarantine block at that time. *Id.* at 5. Mr. Owens told Chief Williams: "You can't let any other infected inmates in here because we ain't going to let you because we don't want to die in here." *Id.* at 5. In response, Chief Williams stated that additional infected inmates would be allowed in, or Mr. Owens and others in the unit would "rot" in lock up. *Id.* at 6. Later that day, under threat of physical injury, the SORT team escorted Mr. Owens and others previously housed in the quarantine dorm to 4-South. *Id.* Mr. Owens was placed in a filthy two-man cell without running water. There was no opportunity for social distancing, no masks, and no cleaning supplies

including bar soap. *Id.* Mr. Owens remained on lockdown and quarantine for about a month. The water was shut off for four days and Mr. Owens felt like he was going to die. *Id.* at 7.

Mr. Owens alleges that Dr. Propst is liable to him because he provided a false COVID-19 report. He argues that the report was used to justify his placement in quarantine. Mr. Owens alleges that he should not have been moved to quarantine because of an elevated temperature. Instead, he asserts that he was entitled to a COVID-19 test. He claims that had he not been placed in the quarantine dorm that he would not have been infected and would not have later developed pneumonia. Dkt. 26 at 8. While in lockdown and quarantine, Mr. Owens developed severe chest pains, harsh cough, labored breathing, and sensations of drowning, but Dr. Propst told him to suck it up and wait it out. *Id.* at 9. Dr. Propst offered no medical assistance. Mr. Owens' symptoms continue to this day. *Id.* at 9.

### III. Discussion of Claims

Mr. Owens' allegations suggest that he is asserting a Fourteenth Amendment claim to reasonably safe living conditions under 42 U.S.C. § 1983 against Chief Williams and Warden Dickerson, and a Fourteenth Amendment denial of medical care claim against Dr. Propst. *See Mays v. Dart*, 974 F.3d 810, 815 (7th Cir. 2020) (discussing coronavirus prevention measures at Cook County Jail under the Fourteenth Amendment).

Lawsuits brought by pre-trial detainees under the Fourteenth Amendment are governed by an objective reasonableness standard rather than the Eighth Amendment's deliberate indifference standard. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). In the context of a conditions of confinement claim, a pretrial detainee is entitled to be free from conditions that amount to "punishment," *Bell v. Wolfish*, 441

U.S. 520, 535 (1979), while a convicted prisoner is entitled to be free from conditions that constitute "cruel and unusual punishment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Construing the complaint in the light most favorable to him, Mr. Owens is presumed to be a pretrial detainee. To state a claim under the Fourteenth Amendment, Mr. Owens must allege that the defendants' actions were objectively unreasonable. *Brown v. Dart*, No. 20-CV-4193, 2021 WL 4401492, at *4 (N.D. Ill. Sept. 25, 2021) (concluding that plaintiff sufficiently alleged that Defendants acted objectively unreasonably in failing to distribute facemasks, disinfectants, or alcohol-based hand sanitizer; failing to regularly sanitize the showers, bathrooms, and eating areas; failing to implement social distancing; and failing to administer a testing program for inmates). Mr. Owens' allegations are sufficient to meet this standard. The Fourteenth Amendment claim based on the conditions of confinement Mr. Owens faced while on quarantine and lockdown shall proceed against Chief Williams and Warden Dickerson. A denial of medical care claim shall proceed against Dr. Propst.

The claims against Core Civic Inc, are **dismissed** for failure to state a claim upon which relief may be granted. Although listed as a defendant, there are no allegations of misconduct asserted against Core Civic, Inc. A governmental entity is liable under § 1983 if "an express policy ... causes a constitutional deprivation when enforced." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). A plaintiff must show a "direct causal link" between the challenged action and violation of his constitutional rights. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). No allegations supporting such a violation were identified in the amended complaint.

Mr. Owens states that he was denied due process when he was placed in quarantine and lockdown for a month. The Constitution does not create a due process liberty interest in avoiding

4

transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin,* inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). Because Mr. Owens was only placed in quarantine and lock down for about a month, he has not stated a due process claim. Accordingly, the due process claim is dismissed.

In summary, the Fourteenth Amendment conditions of confinement and denial of medical care claims are the only viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through April 10, 2023,** in which to identify those claims.

### IV. Service of Process

The **clerk is directed** to terminate Core Civic, Inc. and Jeffrey B. Bernfield[1] on the docket and to add Chief Williams.

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to defendants Dr. Neil D. Propst, Chief Williams, and Warden Terrance Dickerson in the manner specified by Rule 4(d). Process shall consist of the amended complaint filed on August 9, 2022, dkt [26], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

---

[1] Bernfield was named in the original but not the amended complaint.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 3/9/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL T. OWENS
104328
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Dr. Neil D. Propst – EMPLOYEE
Marion County Jail II
730 E. Washington
Indianapolis, IN  46202

Chief Williams- EMPLOYEE
Marion County Jail II
730 E. Washington
Indianapolis, IN  46202

Warden Terrance Dickerson- EMPLOYEE
Marion County Jail II
730 E. Washington
Indianapolis, IN  46202